**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                          )
UNITED STATES OF AMERICA                  )
                                          )
v.                                        )
                                          )        Criminal Action
LINA MARIA OROVIO-HERNANDEZ,              )        No. 25-cr-10045-PBS
                                          )
                         Defendant.       )
_____  )

**MEMORANDUM AND ORDER**

August 6, 2025

Saris, J.

**INTRODUCTION**

Defendant Lina Maria Orovio-Hernandez ("Defendant") is charged with false representation of a social security number, false statement in a passport application, aggravated identity theft, three counts of receiving stolen government money or property, fraudulent voter registration, and fraudulent voting. She moves to suppress evidence obtained during the execution of a federal warrant to search the five bags and the laptop computer she gave to a friend shortly before her arrest.[1] Defendant argues in relevant part that the affidavit in support of the warrant did

_____

[1] Defendant also moved to suppress evidence the government obtained when it executed a separate warrant to search the contents of her cell phone. The Court has already denied this aspect of Defendant's motion. See Dkt. 81.

1

not establish probable cause to believe that evidence of criminal activity would be found in the bags and on the laptop.

After a non-evidentiary hearing, the Court **DENIES** Defendant's motion to suppress (Dkt. 53) with respect to the bags and laptop.

## BACKGROUND

On March 14, 2025, Special Agent Barbara Robertson of the U.S. Department of State's Diplomatic Security Service ("DSS") applied for a federal warrant to search the bags and laptop in question. In support of the application, Agent Robertson submitted an affidavit providing the following information.

Agent Robertson's affidavit began by incorporating a prior affidavit she had submitted to secure a warrant to search Defendant's home, person, and cell phone. The prior affidavit described evidence that Defendant had unlawfully used the identity of a woman named E.C., a U.S. citizen born in Puerto Rico, for various purposes. The Massachusetts Registry of Motor Vehicles ("RMV") issued Defendant nine driver's licenses, state IDs, or learner's permits under E.C.'s name and social security number between 2004 and 2024. Using E.C.'s identity, Defendant received Supplemental Security Income, Section 8 housing, and Supplemental Nutrition Assistance Program benefits. The City of Boston registered E.C. to vote at Defendant's address based on a request in a January 2023 learner's permit application. A ballot was cast under that registration in the November 2024 general election.

Finally, Defendant applied for a U.S. passport under E.C.'s identity in November 2024. The passport application and two state ID applications from 2023 and 2024 listed email addresses that incorporated E.C.'s name.

When processing the passport application, the U.S. Department of State found a denied application for a nonimmigrant visa submitted in Colombia in 2003 under the name of Lina Maria Orovio-Hernandez, an individual without any lawful status in the United States. The individuals in the photographs submitted with the two applications resembled each other. Law enforcement obtained a copy of Orovio-Hernandez's Colombian identity card, which included another picture resembling Defendant. On December 23, 2024, Agent Robertson interviewed Defendant, told her about DSS's investigation, and took her fingerprints. A subsequent forensic analysis showed a match between Defendant's fingerprints and a copy of the fingerprints on Orovio-Hernandez's Colombian identity card.

The affidavit then described evidence law enforcement seized from Defendant's home upon her arrest. This evidence included multiple IDs issued between 2008 and 2024 and other documents in E.C.'s name; a 2015 Toys "R" Us receipt under the name "Lina Hernandez"; and travel documents indicating that Orovio-Hernandez's sisters visited Defendant in 2019 and 2023. Some

paperwork that law enforcement located were at the bottom of a laundry basket intermingled with clothing items.

The affidavit next explained how DSS took possession of the bags and laptop at issue. A woman named Jessica Martinez-Merna came to DSS's attention because she had submitted an affidavit and testified in support of Defendant's 2022 petition to obtain a new Puerto Rican birth certificate in E.C.'s name. Defendant also referred to Martinez-Merna in a recorded jail call following Defendant's arrest, during which she told a friend, "Please speak with Jessica, calm her down, tell her not to lose faith in me, and that she not betray me, and that if she can get the key to my apartment that she go in there and get what she can and not give it to anyone." Dkt. 80-1 ¶ 15. Agent Robertson interviewed Martinez-Merna on March 6, 2025. Martinez-Merna admitted that her affidavit in support of Defendant's birth certificate petition falsely stated that she and Defendant knew each other as children in Puerto Rico.

Immediately after the interview, Martinez-Merna left a voicemail for Agent Robertson. Martinez-Merna explained that Defendant had given her a few bags to keep at her home and had told her she was afraid of being evicted. Martinez-Merna said that she had not looked in or touched the bags but that Defendant told her one contained shoes and clothing. Martinez-Merna offered to provide the bags to law enforcement. Agent Robertson called

Martinez-Merna back to ask if she could tell what was in the bags. Martinez-Merna ended the call and began looking through one of them. Martinez-Merna called Agent Robertson, told her she found a laptop and U.S. currency in a tin cylinder, and said she did not feel comfortable looking any further and wanted law enforcement to retrieve the bags. Agent Robertson obtained the five bags from Martinez-Merna the following day, at which point Martinez-Merna signed a consent-to-search form.

Martinez-Merna also told Agent Robertson that Defendant asked her to safeguard the bags on January 28, 2025, and gave them to her on February 5, 2025. On the same day Defendant asked Martinez-Merna to safeguard the bags, Agent Robertson conducted surveillance at Defendant's apartment complex. Defendant told Martinez-Merna in a jail call that she saw Agent Robertson at the complex on that date. The day before Defendant gave Martinez-Merna the bags, Defendant called Agent Robertson multiple times asking about the status of her "case" and whether Agent Robertson was "ICE." Id. ¶ 24. The affidavit opined that, given this timing, Defendant likely was trying to hide the bags from law enforcement. The affidavit also opined that Defendant's stated reason for giving the bags to Martinez-Merna -- a fear of eviction -- seemed pretextual because Defendant obtained a stay of her eviction order pending appeal on January 31, 2025.

Finally, the affidavit incorporated Agent Robertson's observations from her training and experience that individuals frequently use computers in connection with the types of crimes Defendant committed and that computers store records of such conduct in the form of emails, instant messages, pictures, internet searches, and more. The affidavit also noted that law enforcement can recover computer files and data for months or years after they are created, viewed, or deleted.

Based on this affidavit, a federal magistrate judge issued a warrant to search the five bags and laptop left with Martinez-Merna. Upon executing the warrant, law enforcement uncovered 750,000 Colombian pesos (around $180 in U.S. dollars) in the bags. Forensic review of the laptop was ongoing as of the time Defendant's motion to suppress was briefed.

## DISCUSSION

Defendant argues that the warrant to search the bags and laptop was not supported by probable cause because the accompanying affidavit failed to establish an adequate nexus between her alleged criminal conduct and those items. Defendant adds that Martinez-Merna's execution of a consent-to-search form cannot salvage the lawfulness of the government's search of the bags and laptop because Martinez-Merna lacked actual or apparent authority to consent to the search. At the suppression hearing, Defendant clarified that she is not challenging Martinez-Merna's initial

6

rummaging through the bags where she located the laptop or her subsequent transfer of the bags to Agent Robertson.

The government disagrees with Defendant's arguments regarding probable cause and consent and asserts that Defendant lacked a reasonable expectation of privacy in the bags and laptop because she had abandoned them. The government also argues that even if the warrant was not supported by probable cause, the affidavit was not so deficient that law enforcement could not rely on the warrant in good faith.

The Court agrees with the government that the affidavit established probable cause to believe that evidence of Defendant's criminal conduct would be found in the bags and on the laptop. The Court therefore need not address any of the other arguments advanced by the parties.

The Fourth Amendment mandates that warrants be based on probable cause. See U.S. Const. amend. IV. Probable cause "is not a high bar" and demands "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." United States v. Cortez, 108 F.4th 1, 8 (1st Cir.) (cleaned up), cert. denied, 145 S. Ct. 578 (2024). Moreover, "an affidavit submitted to show probable cause need not point to some straight-line connection but, rather, may rely on the affiant's connecting of a series of dots in a commonsense way." United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020). To determine "whether a search warrant

affidavit establishes probable cause," courts "consider . . . the totality of the circumstances based on the facts and supported opinions set out within the four corners of the affidavit." Cortez, 108 F.4th at 8 (cleaned up). Courts must also "give significant deference to the magistrate judge's initial evaluation," disagreeing only if there is "no 'substantial basis' for concluding that probable cause existed." United States v. Chiu, 36 F.4th 294, 297 (1st Cir. 2022) (quoting United States v. Mendoza-Maisonet, 962 F.3d 1, 16 (1st Cir. 2020)).

The probable cause inquiry is two-fold: "[a]n application for a warrant must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched -- the so-called 'nexus' element." United States v. Gonzalez, 113 F.4th 140, 148 (1st Cir. 2024) (quoting United States v. Roman, 942 F.3d 43, 50 (1st Cir. 2019)). In other words, there must be "a '"fair probability" -- not certainty -- that evidence of a crime will be found in a particular location.'" United States v. Corleto, 56 F.4th 169, 175 (1st Cir. 2022) (quoting United States v. Lindsey, 3 F.4th 32, 39 (1st Cir. 2021)). Satisfaction of the nexus element "can be 'inferred from the type of crime, the nature of the items sought, . . . and normal inferences as to where a criminal would hide [evidence of a

crime].'" Id. (alterations in original) (quoting Lindsey, 3 F.4th at 39).

Defendant contends that Agent Robertson's affidavit failed to support an adequate nexus between her alleged criminal conduct and the bags and laptop because it was "just as likely that [she] was . . . looking to store the items with [Martinez-Merna] because of her fear of eviction" as that she wanted to hide the items from law enforcement. Dkt. 53 at 15. Defendant emphasizes that the stay of her eviction order was temporary and contingent on her diligently prosecuting her appeal and that she knew she would not be able to prosecute her appeal if she were arrested. Defendant also argues that the affidavit did not offer any specific observations suggesting that the laptop would contain evidence of her criminal conduct.

The affidavit established probable cause to believe that evidence of Defendant's alleged criminal conduct would be found in the bags and on the laptop. To begin, the affidavit supported a reasonable inference that Defendant's stated justification for entrusting Martinez-Merna with the items -- that she feared eviction -- was pretextual and that her true motive was to safeguard the items from law enforcement. Defendant asked Martinez-Merna to take the bags on the same day she saw Agent Robertson surveilling her apartment complex. Defendant knew at that point that DSS was investigating her passport application.

Defendant then gave the bags to Martinez-Merna one day after she asked Agent Robertson about her "case" and if Agent Robertson was "ICE." Dkt. 80-1 ¶ 24. Defendant later asked a friend to tell "Jessica" -- likely Martinez-Merna -- to "not betray" her and to collect other items from her apartment. Id. ¶ 15. This sequence of events established a fair probability that Defendant was worried law enforcement was investigating her and was trying to hide incriminating evidence.

Moreover, the fact that Defendant obtained a stay of her eviction order between asking Martinez-Merna to safeguard the bags and giving them to her offered a reasonable basis to discredit that Defendant was motivated by her possible eviction. While Defendant insists her fear of eviction was legitimate because she knew she might not be able to prosecute her appeal, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." District of Columbia v. Wesby, 583 U.S. 48, 61 (2018).

The affidavit also adequately tied the laptop and the bags to evidence of Defendant's alleged criminal conduct. Defendant listed email addresses incorporating E.C.'s name on her 2024 passport application and two state ID applications from 2023 and 2024. The laptop may well have contained documents and communications about those applications. Additionally, Agent Robertson explained based on her training and experience that computers usually contain

10

records of emails, instant messages, pictures, internet searches, and other online activity. Such information would be probative of Defendant's identity, a key issue for the crimes she allegedly committed. See Adams, 971 F.3d at 32 ("[A] law enforcement officer's training and experience may yield insights that support a probable cause determination." (quoting United States v. Floyd, 740 F.3d 22, 35 (1st Cir. 2014))). As for the bags more broadly, the affidavit noted that law enforcement had found at Defendant's apartment a number of documents related to her true identity and her use of E.C.'s identity, some of which were at least a decade old. Given the reasonable inference that Defendant was trying to hide items from law enforcement, it was also plausible to infer that Defendant had kept other evidence related to her true identity and her use of E.C.'s identity and had included that evidence in the bags.

Accordingly, Agent Robertson's affidavit established probable cause to believe that law enforcement would find evidence of Defendant's alleged criminal conduct in the bags and on the laptop.

## ORDER

For the foregoing reasons, Defendant's motion to suppress (Dkt. 53) with respect to the bags and laptop is **DENIED**.

11

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge